**The below described is SIGNED.**





**Dated: March 5, 2014**

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>GERHARD EMIL MAALE, III,<br><br>  Debtor. | Bankruptcy Number: 11-35330<br><br>Chapter 11 |
| BRAD PRATT AND KAYE PRATT, dba, PROMED BILLING, INC.,<br><br>  Plaintiffs,<br><br>vs.<br><br>GERHARD EMIL MAALE, III, an individual, and DALLAS - FORT WORTH SARCOMA GROUP, P.A.,<br><br>  Defendants. | Adversary No. 13-02511<br><br>Chief Judge William T. Thurman |

**MEMORANDUM DECISION DETERMINING MOTION TO REMAND AND
DENYING MOTION TO TRANSFER VENUE**

1

On February 19, 2014, the Court held hearings on a Motion to Remand or Abstain

brought by Brad and Kaye Pratt, dba Promed Billing Inc., (the "Pratts") and a Motion to Transfer

Venue brought by Gerhard E. Maale ("Maale") and the Dallas-Fort Worth Sarcoma Group, P.A.,

(the "Sarcoma Group"). R. Stephen Marshall represented the Pratts and Jeremy Sink represented

Maale and the Sarcoma Group. Following oral argument, the Court took the matter under

advisement. After considering the arguments, reviewing the pleadings, and conducting its own

research, the Court issues the following ruling:

**I. Facts**

Maale filed an individual chapter 11 petition in the Northern District of Texas on August 25,

2011. Robert Yaquinto (the "Trustee") was appointed trustee on October 18, 2011. On or about

March 20, 2012, during the pendency of the case, Maale and the Sarcoma Group entered into a

contract (the "Contract") with the Pratts for billing services. Both Maale and the Sarcoma Group

signed the Contract.

The Pratts were aware after conversations with the Trustee that Maale had previously filed

for bankruptcy. The parties dispute whether the Pratts were aware that Maale was in bankruptcy

when the Contract was entered into. The parties appear to agree that in either event the Pratts did

not receive formal notice of any deadlines in connection with Maale's bankruptcy case.

On or about February 8, 2013, the Sarcoma Group terminated the Contract. Both parties

allege the other breached.

Maale's Chapter 11 Plan (the "Plan") was confirmed on September 25, 2013 with an

effective date of October 7, 2013. The bar date to request an administrative expense was

November 6, 2013. The Pratts did not file a proof of claim or a request for an administrative

2

expense.

The Pratts filed a complaint in Utah state court on or about October 28, 2013 against Maale and the Sarcoma Group for breach of contract and unjust enrichment. The Pratts requested damages of $48,106.01. Maale and the Sarcoma Group counterclaimed for damages in excess of $75,000.

Maale removed the proceeding to this Court on December 20, 2013, arguing that it is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). The Pratts filed the Motion to Remand under 28 U.S.C § 1452(b) or Abstain under 28 U.S.C. § 1334(c)(1) and (2) on January 21, 2014. The Pratts argued that abstention or permissive remand was appropriate because the claims arose solely under state law. On January 23, 2014, Maale and the Sarcoma Group filed the Motion to Transfer Venue to the United States Bankruptcy or District Court for the Northern District of Texas, Dallas Division, where Maale's case was filed and is still open.

For the convenience of the parties and the Court, the Court authorized the hearings on the Pratts' Motion to Remand and Maale's Motion to Transfer Venue to be heard together. The Court specifically finds that notice of hearing on the motions are and has been adequate. Venue and jurisdiction are discussed hereafter.

## II. Analysis

The proceeding was initially removed because Maale argued that the proceeding "involves" administrative claims. The Pratts argued in response that the Court must abstain because the causes of action arise solely under state law. After this point, the parties' memoranda took a different form: the parties began to focus their argument on whether the Pratts' recovery was barred by the Plan. The Pratts based their argument on due process. They cite to <u>Reliable Elec.</u>

3

Co., Inc. v. Olson Const. Co., 726 F.2d 620 (10th Cir. 1984) for the proposition that reasonable

notice of the confirmation hearing, which under Reliable they did not receive, is required before

a claim can be discharged. Oral argument focused almost entirely on this issue.

   With the parties focusing on the issues of due process and discharge, the parties did not

contest the Court's subject matter jurisdiction over the removed complaint. The Court must

nonetheless determine whether it has jurisdiction before it may issue a ruling. Basso v. Utah

Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974) ("If the parties do not raise the question

of lack of jurisdiction, it is the duty of the federal court to determine the matter sua sponte.").

A. Removal Is Improper Because This Court Lacks Jurisdiction

   The pertinent removal statue is 28 U.S.C. section 1452. Section 1452 provides that "[a] party

may remove any claim or cause of action in a civil action . . . to the district court for the district

where such civil action is pending . . . *if such district court has jurisdiction of such claim or

cause of action under section 1334 of this title*." 28 U.S.C. § 1452(a) (emphasis added). 28

U.S.C. section 1334 of grants bankruptcy subject matter jurisdiction over three distinct types of

civil proceedings: (1) proceedings "arising under" title 11; (2) proceedings "arising in" a case

under title 11; and (3) proceedings "related to" a case under title 11. 28 U.S.C. § 1334(b). 28

U.S.C. section 157 further divides bankruptcy court jurisdiction into two categories: (1) core

jurisdiction, over which the bankruptcy court may enter final orders; and (2) non-core

jurisdiction, over which the bankruptcy court may not enter final orders. 28 U.S.C. § 157(b)-(c).

Proceedings "arising under" title 11 or "arising in" a case under title 11 are core proceedings. 28

U.S.C. § 157(b)(1). Proceedings which are only "related to" a case are non-core proceedings. 28

U.S.C. § 157(c)(1).

4

There are six causes of action over which this Court is requested to rule. These causes of

actions can be placed in four categories: (1) the Pratts' breach of contract and unjust enrichment

causes of action against the Sarcoma Group; (2) the Pratts' breach of contract and unjust

enrichment causes of action against Maale; (3) Maale's breach of contract counterclaim against

the Pratts; and (4) the Sarcoma Group's breach of contract counterclaim against the Pratts. The

Court will take each in turn.

*1. Category One: The Court Lacks Jurisdiction to Rule on the Pratts' Actions Against the*

*Sarcoma Group*

a. The Court Cannot Exercise Core Jurisdiction

"Actions which do not depend on the bankruptcy laws for their existence and which could

proceed in another court are not core proceedings." In re Gardner, 913 F.2d 1515, 1518 (10th Cir.

1990).

Both prongs of the Gardner test are met here. First, the causes of action do not depend on the

bankruptcy laws for their existence: they are based solely on state-created rights. Second, the

proceeding was originally brought in state court and would have proceeded there had it not been

removed. The proceeding thus could proceed in another court. Therefore, the actions are not core.

b. The Court Cannot Exercise Non-Core Jurisdiction

"[T]he test for determining whether a civil proceeding is related in bankruptcy is whether the

outcome of that proceeding could conceivably have any effect on the estate being administered in

bankruptcy." In re Gardner, 913 F.2d at 1518 (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994

(3d Cir.1984)).

The Court does not see how the Pratts' causes of action against the Sarcoma Group could

affect the bankruptcy estate. Neither the Pratts nor the Sarcoma Group was a debtor to the case,

nor would recovery by any party go towards paying creditors of the estate.

The only relation that the Sarcoma Group has to the bankruptcy estate is that Maale's

ownership shares in the Sarcoma Group were at one point property of the estate. See 11 U.S.C. §

541. Upon confirmation, however, the shares vested in Maale. See 11 U.S.C. § 1141(b). Thus, as

the Pratts' causes of action against the Sarcoma Group involves no debtors, would not result in

any payment to creditors, and does not involve property of the estate, the proceeding is not

related to the bankruptcy case. See Gardner 913 F.2d at 1518 ("When property leaves the

bankruptcy estate . . . the bankruptcy court's jurisdiction typically lapses . . . and the property's

relationship to the bankruptcy proceeding comes to an end."); accord In re Barnes, 365 B.R. 1, 4

(Bankr. D.D.C. 2007) ("The inquiries will not lead to any proceeding having an impact on the

administration of the bankruptcy estate: the recoveries would not be by the estate, and the claims

are not against the estate, and thus the inquiries are not related to the bankruptcy case.").

*2. Category Two: The Court Lacks Jurisdiction to Rule on the Pratts' Actions Against Maale*

a. The Court Cannot Exercise Core Jurisdiction

The Pratts' causes of action against Maale are not core because they arise exclusively under

state law and could be brought in Utah state court. See Gardner, 913 F.2d at 1518.

Maale asserts that the Court has core jurisdiction over this proceeding because it "involves"

an administrative claim. A look at the claims register in Maale's bankruptcy case reveals that the

Pratts were not allowed an administrative claim. Moreover, the Pratts do not seek an

administrative claim; they seek only state court judgments against Maale and the Sarcoma Group.

Maale argues that the Pratts accrued an administrative claim which they failed to file. Under

the Plan, administrative claims which were not filed by the applicable bar date are "forever

barred and discharged."

The complaint before the Court is not one to determine the dischargeability of a claim and so

the Court is unwilling to rule on that issue. However, even under this theory, the suit does not

"involve" an administrative claim.

Title 11 provides nine non-exclusive categories of administrative expenses. 11 U.S.C.

§503(b)(1)-(9). Although none of these categories ostensibly include the breach of a post-petition

contract, Maale asserts in his Motion to Transfer Venue that the administrative claim was

accrued under section 503(b)(1). Section 503(b)(1) states that the "actual, necessary costs and

expenses of preserving the estate" are administrative expenses. 11 U.S.C. § 503.

The trustee's obligations under post-petition contracts entered into between the trustee and

another party may be eligible for administrative expense status. 4 Collier on Bankruptcy ¶

503.06[6][a] (16th ed. 2013). To qualify as an actual and necessary preservation expense: (1) the

debt must arise out of a transaction between the creditor and the bankrupt's trustee; and (2) the

expense is allowed only the extent that it benefitted the estate. In re Amarex, 853 F.2d 1526,

1530 (10th Cir. 1988); In re Dahlgren Int'l, Inc., 147 B.R. 393, 402 (N.D. Tex. 1992). "It is only

when the [trustee's] actions themselves-that is, considered apart from any obligation of the

debtor-give rise to a legal liability that the claimant is entitled to the priority of a cost and

expense of administration." In re Commercial Fin. Servs., Inc., 246 F.3d 1291, 1294 (10th Cir.

2001) (quoting In re Mammoth Mart, Inc., 536 F.2d 950, 955 (1st Cir. 1976)).

While the Trustee was apparently consulted, the Trustee does not appear to have intended to

bind the estate. The Contract states that "[t]his agreement is made and entered into . . . by and

7

between Kaye Pratt and Brad Pratt of Tooele, Utah, doing business as ProMed Billing Inc.

(Contractor) and Dallas – Fort Worth Sarcoma Group, P.A. and Gerhard E. Maale III, MD

(Provider) . . . .” The Contract is then signed by the Pratts, Maale, and the Sarcoma Group.

Nowhere in the Contract is the Trustee or the estate mentioned or alluded to. Nowhere in the

pleadings or in oral argument did the parties suggest that the Contract was induced by the

Trustee. The Trustee's affidavit similarly suggests that he did not enter the estate into the

transaction: "*Maale determined* that DFW Sarcoma should sign a contract with ProMed to

provide billing services to DFW Sarcoma and DFW Sarcoma and *Maale signed* . . . ." Yaquinto

Aff. ¶11 (emphasis added).

This cause of action points out the clear differences between the estate of Maale and Mr.

Maale the individual. These distinct differences define the determination of this Court. The Court

has been unable to find authority providing that a post-petition debtor may bind the estate where

a trustee has assumed control. Indeed, finding such would be a surprise where the clear language

of the pertinent statutes provide that the estate must be in the picture.

As the Contract did not arise between the Trustee and the Pratts, damages arising out of it

cannot be classified as an administrative expense under section 503(b)(1). Additionally, the

Pratts do not have nor seek an administrative claim. The proceeding thus does not "involve" an

administrative claim.

b. The Court Cannot Exercise Related To Jurisdiction

The Pratts do not have a pre-petition claim against the estate because the conduct which gave

rise to the debt arose post-petition. See In re Parker, 313 F.3d 1267, 1269 (10th Cir. 2002)

(adopting the conduct theory to determine when a claim arose). As the Pratts do not have either

8

an administrative claim or a pre-petition claim against the estate, Maale's bankruptcy estate

would not be affected by the proceeding. As illustrative of this, see 11 U.S.C. § 101(10) ("The

term 'creditor' means . . . entity that has a claim against the debtor that arose at the time of or

before the order for relief concerning the debtor . . . ."); In re Gantz, 209 B.R. 999, 1003 (B.A.P.

10th Cir. 1997) ("In law, only prepetition debts are subject to discharge through bankruptcy."); In

re Farmers Co-op. Ass'n, 323 B.R. 494, 503 (Bankr. D. Kan. 2005) ("As a general principle,

bankruptcy cases deal with the treatment of debt which arose prepetition; postpetition claims are

in most cases unaffected by the bankruptcy filing."); In re Baseline Sports, Inc., 393 B.R. 105,

127 (Bankr. E.D. Va. 2008) ("Only pre-petition and administrative claims may be paid from the

bankruptcy estate; post-petition debts that cannot be categorized as administrative expenses are

not claims against the bankruptcy estate.").

　　　Maale argues that jurisdiction is provided for in the Plan because the Plan provides for the

retention of jurisdiction over: (1) administrative claims; and (2) all causes of action involving

Maale. First, as explained above, this proceeding does not involve an administrative claim.

Second, a plan cannot expand a court's jurisdiction beyond its statutory reach. In re Houlik, 481

B.R. 661, 673 (B.A.P. 10th Cir. 2012) ("[A] bankruptcy court's jurisdiction is not derived from

provisions of [Title 11], and is instead confined solely to proceedings described in Title 28 of the

United States Code."); see, also, In re Resorts Int'l, Inc., 372 F.3d 154, 169 (3d Cir. 2004) ("the

jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C.

§ 1334 or 28 U.S.C. § 157."); In re S.N.A. Nut Co., 206 B.R. 495, 500 (Bankr. N.D. Ill. 1997)

("This Court may not assert jurisdiction simply because jurisdiction is provided for in Debtor's

Plan."). As the proceeding is not related to the case, the Court lacks jurisdiction.

*3. Category Three: The Court Lacks Jurisdiction to Rule on Maale's Counterclaim Against the*

*Pratts*

a. The Court Cannot Exercise Core Jurisdiction

Maale asserts a breach of contract counterclaim in his answer by stating: "Plaintiffs failed

to comply with the Contract and, therefore, breached the Contract. The Plaintiff's breaches of the

Contract caused damages to the Defendants in excess of $75,000."

Like the Pratts' breach of contract claim, this cause of action does not arise under the

bankruptcy laws and may be brought in state court. It is therefore not a core proceeding. See

Gardner, 913 F.2d at 1518.

b. The Court Cannot Exercise Related To Jurisdiction

The pleadings indicate that Maale is not acting as a representative of the estate but rather

as an individual. Any recovery would thus not go towards the estate. The Court therefore does

not see how this breach of contract suit could affect the estate.

Maale asserted at the hearing that the Court has jurisdiction because the counterclaim is

property of the estate. "[Property of the estate includes] all legal or equitable interests of the

debtor as of the commencement of the [debtor's bankruptcy] case." 11 U.S.C. § 541(a)(1).

Although all property of the estate generally vests in the debtor following confirmation, the plan

may provide exceptions. 11 U.S.C. § 1141(b).

The Plan provides that "all of the Assets, including Causes of Action . . . shall re-vest in

the Debtor . . . ." The counterclaim thus cannot be property of the estate.

Additionally, the cause of action is not property of the estate because the cause of action

did not arise prior to the commencement of the case. See In re Davis, 253 F.3d 807, 810 (5th Cir.

2001) ("Because [the debtor] had no such claim as of the commencement of his bankruptcy case, such claim also could not have been included in his estate.").

Furthermore, while the estate may acquire post-petition property, this only refers to property acquired by the estate, not the debtor. 11 U.S.C. § 541(a)(7); Patrick A. Casey, P.A. v. Hochman, 963 F.2d 1347, 1351 (10th Cir. 1992) ("The argument of the appellees confuses property acquired by the debtors and property acquired by the estate."). As noted above, the contract was entered into by Maale, not the Trustee as representative of the estate. Accordingly, this cause of action would belong to Maale, not the estate. See, e.g., In re Doemling, 127 B.R. 954, 956 (W.D. Pa. 1991) (holding that debtor's tort claim arising from a car accident five months after the petition was filed was not property of the estate).

Both parties allude to 28 U.S.C. section 157(b)(2)(C), which provides that "counterclaims by the estate against persons filing claims against the estate" are core proceedings. 28 U.S.C. § 157(b)(2)(C). Maale asserts that the Court has exclusive jurisdiction over Maale's counterclaim because it belongs to the estate. The Pratts argue that, under Stern v. Marshall, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011), the Court does not have even have non-core jurisdiction over Maale's counterclaim.

Section 157(b)(2)(C) is inapplicable to this proceeding because: (1) the counterclaim is not brought by the estate, but rather Maale in his individual capacity; and (2) the Pratts did not file a claim and thus are not "persons filing claims against the estate." Additionally, Stern v. Marshall merely held that, under certain circumstances, bankruptcy courts may not enter final judgments on state law counterclaims, even if the proceeding literally falls within section 157(b)(2)(C)'s description. Id at 2608. The Supreme Court did not address whether bankruptcy

11

courts have jurisdiction over such claims. Accordingly, applying <u>Stern v. Marshall</u> to direct the

Court's ruling would not be appropriate.

Moreover, bankruptcy jurisdiction over civil proceedings is "original but not exclusive."

28 U.S.C. § 1334(b). Maale's argument that the state court cannot hear this proceeding is thus

not persuasive. Accordingly, neither party's argument carries the day on this point.

As the cause of action is not property of the estate, nor would any recovery benefit

creditors, the Court concludes that this counterclaim would not affect the estate. The Court

therefore lacks jurisdiction over this cause of action.

*4. Category Four: The Court Lacks Jurisdiction On the Sarcoma Group's Counterclaim Against*

*the Pratts*

The Sarcoma Group's counterclaim against the Pratts arises exclusively under state

contract law and could proceed in Utah state court. Therefore, it is not a core proceeding.

Additionally, the Court does not see how this nondebtor's state court breach of contract claim

brought post-petition against a third party could possibly affect the bankruptcy estate.

Accordingly, the Court lacks jurisdiction over the Sarcoma Group's counterclaim.

<u>B. The Proceeding Shall be Remanded to Utah State Court</u>

Section 1447 of Title 28 provides that "[i]f at any time before final judgment it appears

that the district court lacks subject matter jurisdiction, the [removed] case shall be remanded." 28

U.S.C. § 1447(c); <u>see</u> <u>Things Remembered, Inc. v. Petrarca</u>, 516 U.S. 124, 129 (1995) (holding

that section 1447(d) applies to proceedings removed under section 1452); <u>Daleske v. Fairfield</u>

<u>Communities, Inc.</u>, 17 F.3d 321, 324 (10th Cir. 1994) ("[T]he provisions of 28 U.S.C. § 1447(c)

apply to cases removed under § 1452(a) . . . ."); <u>In re Midgard Corp.</u>, 204 B.R. 764, 772-73

(B.A.P. 10th Cir. 1997) ("If it lacked jurisdiction, the Bankruptcy Court was required as a matter

of law  to remand the State Court action because removal under 28 U.S.C. § 1452(a) is

contingent on jurisdiction under 28 U.S.C. § 1334.")

As this Court lacks subject matter jurisdiction, the proceeding must be remanded.

C. Even If The Court Has Jurisdiction, The Court Must, or Alternatively, Should Abstain

Even if the Court had jurisdiction, the Court would be required to abstain under 28 U.S.C.

section 1334(c)(2). The five elements of mandatory abstention are: (1) timely motion; (2) state

law claim; (3) "related to" jurisdiction; (4) no independent ground for federal jurisdiction; and

(5) action must be capable of timely adjudication in state court. In re Midgard Corp., 204 B.R.

764, 776-78 (B.A.P. 10th Cir. 1997).

The Court finds that all of the elements are met: (1) the motion was timely as it was filed

just over a month after the proceeding was removed, (2) all of the claims and counterclaims are

state law breach of contract claims, (3) at best the Court would be able to exercise only "related

to" jurisdiction because none of the claims or counterclaims met the Gardner test, (4) there are no

grounds for federal jurisdiction other than section 1334 as there is no other federal question

involved nor do the parties meet the amount in controversy requirement for diversity jurisdiction,

see Klutts Equip., Inc. v. Redstick, Inc., 2009 WL 1955314 (E.D. Okla. 2009) ("[T]he Court does

not consider the value of counterclaims when measuring the amount in controversy in removal

cases."); Dresser-Rand v. N. Natural Gas Co., 2000 WL 286733 (D. Kan. 2000), and (5) there is

no reason why the breach of contract actions cannot be adjudicated in state court.

13

The Court would alternatively use its discretion to remand the case under either 28 U.S.C.

section 1334(c)(1) or 28 U.S.C. section 1452(b). Courts cite a number of factors helpful in

determining discretionary remand under section 1334(c)(1), including:

> (1) The effect or lack thereof on the efficient administration of the estate if a court
> recommends abstention, (2) the extent to which state law issues predominate over
> bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the
> presence of a related proceeding commenced in state court or other nonbankruptcy court,
> (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of
> relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the
> substance rather than the form of the asserted "core" proceeding, (8) the feasibility of
> severing state law claims or bankruptcy matters to allow judgments to be entered in state
> court with enforcement left to the bankruptcy court, (9) the burden of my docket, (10) the
> likelihood that the commencement of the proceeding in the bankruptcy court involves
> forum shopping by one of the parties, [(11) Existence of a Right to a Jury Trial], and (12)
> the presence in the proceedings of nondebtor parties.

In re Terracor, 86 B.R. 671, 679 (D. Utah 1988); In re Schempp Real Estate, LLC, 303 B.R. 866,

876 (Bankr. D. Col. 2003). The factors covering equitable remand cover substantially the same

issues and will not be discussed separately. See River Cement Co. v. Bangert Bros. Const. Co.,

852 F. Supp. 25, 27 (D. Colo. 1994) ("1) duplication of judicial resources; 2) uneconomical use

of judicial resources; 3) effect of remand on the administration of the bankruptcy estate; 4) case

involves questions of state law better addressed by a state court; 5) comity; 6) prejudice to the

involuntarily removed parties; 7) lessened possibility of an inconsistent result; and 8) expertise of

the court where action originated.").

The Court is particularly concerned about: (1) the inability of the causes of action to

affect the estate given that any damages would not affect creditors; (2) the prevalence of state law

claims; and (3) the presence of the nondebtor Sarcoma Group in the proceedings. Accordingly,

this Court would choose to abstain if the proceeding was not required to be remanded for lack of

jurisdiction.

14

D. The Pratts' Oral Request to Determine Dischargeability Was Procedurally Improper

Despite arguing for a remand based on the prevalence of state law claims, the Pratts surprisingly argued extensively that this Court should rule that any damages they receive as a result of the state court action would be nondischargeable for lack of formal notice. In fact, the Pratts argued that dischargeability was the "fundamental issue."

Nondischargeability determinations are core proceedings. 28 U.S.C. § 157(b)(2)(I). The Court, however, is not presented with a nondischargeability complaint. The matters before the Court are limited to motions on whether the post-petition state law causes of action asserted by the parties should be remanded, retained, or transferred. The Court thus may not exercise core jurisdiction under section 157(b)(2)(I).

If the Pratts wish to insist that a bankruptcy court rule over the proceeding by requesting a determination of nondischargeability, they may seek to do so.[1] They must, however, follow the Federal Rules of Bankruptcy Procedure and file a complaint in Maale's bankruptcy case in Texas: an oral request in this Court will not suffice. See Fed. R. Civ. P. 4007, 7001-7003.

**III. Conclusion**

This ruling is not a determination of discharge. Rather, simply based on the facts before it, this Court finds that removal was inappropriate because this Court lacks subject matter jurisdiction over the proceeding. Further, sufficient grounds exist to remand this proceeding to the state court.

A separate Order accompanies this decision.

---

[1] The Court recognizes that it may be difficult to do so given the posture of the case in Texas.

15

_____END OF DOCUMENT_____

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION DETERMINING MOTION TO REMAND AND DENYING MOTION TO TRANSFER VENUE** will be effected through the Bankruptcy Noticing Center to each party listed below:

Brad Pratt
c/o Durham Jones & Pinegar
111 E Broadway
Suite 900
Salt Lake City, UT 84110-4050
    *Plaintiff*

Kaye Pratt
c/o Durham Jones & Pinegar
111 East Broadway
Suite 900
Salt Lake City, UT 84111
    *Plaintiff*

Jason R. Hull
Marshall Olson & Hull, P.C.
Newhouse Building
10 Exchange Place, Suite 350
Salt Lake City, UT 84111
    *Attorney for Plaintiffs*

R. Stephen Marshall
Marshall Olson & Hull
Ten Exchange Place
Suite 350
Salt Lake City, UT 84111
    *Attorney for Plaintiffs*

Gerhard Emil Maale, III, et al.
4708 Alliance Blvd
Pavilion 1 Suite 710
Plano, TX 75093
    *Defendant*

Dallas-Fort Worth Sarcoma Group, P.A.
c/o Gerhard E. Maale, III
4708 Alliance Blvd.
Pavilion 1 Suite 710
Plano, TX 75093
    *Defendant*

Jeremy C. Sink
McKay Burton & Thurman
170 South Main Street
Suite 800
Salt Lake City, UT 84101
    *Attorney for Defendants*

Richard W. Ward
6860 North Dallas Parkway Ste 200
Plano, TX 75024
    *Attorney for Defendants*